UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    BRIAN MOOSE ) | Case No. 09-16920-SSM |
|    LAURA C. MOOSE ) | Chapter 13 |
| ) | |
|        Debtors ) | |

**MEMORANDUM OPINION**

Before the court is the objection of Thomas P. Gorman, standing chapter 13 trustee, to confirmation of the plan filed by the debtors on September 3, 2009. A hearing was held on October 28, 2009, at which the debtors were present by counsel and the chapter 13 trustee was present in person. The issue is whether above-median income debtors whose disposable income under the chapter 13 "means test" is negative, may propose a plan with a duration of less than 60 months. For the reasons stated, the court concludes that the plan cannot be confirmed unless extended to 60 months.

Background

Brian Moose and Laura C. Moose are educators earning a combined income of $11,699 a month and have two minor children. They filed a voluntary petition in this court on August 25, 2009, for adjustment of their debts under chapter 13 of the Bankruptcy Code. On their schedules, they list unsecured debts in the total amount of $202,786, take-home pay in the amount of $8,197 a month, and living expenses of $7,787 a month, leaving a surplus of $410.00 per month with which to fund a plan. On their "means test" form (Form B22C) they reported current monthly income (CMI) of $11,383, which, on an annualized basis, is above the $85,769

1

state-wide median for a family of four.  They claimed deductions and adjustments under the means test—none of which the trustee has challenged—in the total amount of $13,146, for a calculated monthly disposable income of <u>negative</u> $1,763.

The plan before the court was filed on September 3, 2009.  It provides for payment to the trustee of $410.00 per month for 36 months.  From the payments received, the trustee, after deduction of his statutory 10% commission, would pay a secured claim of $813 with interest at 5% over 36 months, and the balance would be paid *pro rata* to unsecured creditors, with the projected dividend being 5 cents on the dollar.[1]  The debtors would maintain regular monthly payments on a first deed of trust against their residence in favor of GMAC Mortgage, while an adversary proceeding would be filed to "strip off," as wholly unsecured, a second deed of trust in favor of Citi Mortgage.[2]

Discussion

A.

Chapter 13 allows a financially-distressed individual to restructure and repay debts over a three to five-year period under court protection and supervision.  Priority claims must be paid in

---

[1] The trustee's commission and payments on the secured claim would total $2,376, leaving $12,384 for unsecured claims.  If the debtors are successful in avoiding the second deed of trust, the total amount of unsecured claims—the $135,099 Citi Mortgage debt and the $202,786 in scheduled unsecured claims—would be $337,885, which would equate to a dividend of 3.6 cents on the dollar. The court notes that—if the amounts shown in the schedules are correct—there is a substantial question of the debtors' eligibility to proceed under chapter 13, since the total unsecured debt would exceed by a few hundred dollars the unsecured debt limit of $336,900 for chapter 13.  *See* § 109(e), Bankruptcy Code.

[2] The adversary proceeding has not yet been filed, but the schedules reflect a current market value for the property of $440,000, with the balance on the first deed of trust being $546,403 and the balance on the second deed of trust being $135,099.

full, as must secured claims if the debtor intends to keep the collateral. However, unsecured claims may be paid at less than 100 cents on the dollar provided (1) the plan is proposed in good faith, (2) unsecured creditors receive at least as much as they would receive in a chapter 7 liquidation, and (3) the debtor devotes his or her "projected disposable income" to the plan over the applicable three or five-year "commitment period." § 1325(a)(3), (a)(4), (b)(1), (b)(4), Bankruptcy Code.

The trustee's objection is that the plan before the court does not provide for payments over the full 60-month commitment period required of above-median income debtors by § 1325(b)(4) of the Bankruptcy Code. The debtors' response, in a nutshell, is that the statutory commitment period is simply a multiplier, and that since under the means test they have *no* disposable income, there is no minimum period during which they must make plan payments.

As this court has previously explained:

> The disposable income test for chapter 13 plans has existed since 1984. Until enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"), it simply required that a chapter 13 debtor whose plan did not pay claims in full devote his or her "projected disposable income" to the plan for 36 months. § 1325(b), Bankruptcy Code. Prior to the enactment of BAPCPA, the enforcement of this requirement traditionally centered on an analysis of the schedules of monthly income and expenses (Schedules I and J) filed by the debtor, with the court making adjustments where the amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive. Such judgments were often, to say the least, highly subjective, with the result that expenses that might be allowed in one court, or by one judge of a particular court, might be disallowed by another.
>
> BAPCPA did not change this paradigm for debtors whose household income was less than the state-wide median income for a household of the same size. For above-median income debtors, however, two significant changes were made. First, the period the debtor was required to pay his or her projected disposable income into the plan ("the commitment period") was increased from 36 months to 60 months, unless claims could be paid in full in a shorter period.

> § 1325(b)(4)(A)(ii), Bankruptcy Code. Second, disposable income was to be
> calculated using the "means test" methodology implemented by BAPCPA for
> determining whether a chapter 7 filing was presumed to be an abuse.
> § 1325(b)(3), Bankruptcy Code.

*In re Degrosseilliers*, 2008 WL 2725808, 2008 LEXIS 2017 *7 (Bankr. E.D. Va., July 11, 2008).

A number of curious questions have sharply divided courts wrestling with the disposable income test post-BAPCPA. One—which arises most commonly when there is a substantial disconnect between the artificial calculation of disposable income under the means test and the debtor's actual ability to fund a plan—is whether "projected" disposable income for an above-median income debtor is simply the calculated disposable income multiplied by the 60-month commitment period or instead may properly take into account known or anticipated changes to the debtor's income and expenses.[3] And the second—which is the focus of the trustee's objection in this case—is whether the "applicable commitment period" is a temporal requirement or simply a multiplier. Put another way, the issue is whether a debtor whose plan pays unsecured debts less than 100 cents on the dollar but whose calculated disposable income is very low or (as here) zero, must make payments over the full commitment period or instead need only pay unsecured creditors a dollar amount equal to the calculated disposable income multiplied by 60. If the latter is correct, and if the debtor's disposable income under the means test is zero, then the plan need not be of any particular duration (other than to provide for payment of secured and priority claims) since zero times 60 always equals zero.

The Fourth Circuit has not yet ruled on this issue, and the only two courts of appeal that have squarely addressed it—the Eighth and the Ninth Circuits—have reached different

---

[3] The Supreme Court has recently granted *certiorari* to decide this issue. *Hamilton v. Lanning*, 545 F.3d 1269 (10th Cir. 2008), *cert. granted*, — S.Ct. — (Nov. 2, 2009).

conclusions. *Compare In re Frederickson*, 545 F.3d 652 (8th Cir. 2008) (holding that applicable commitment period is a temporal concept), *with In re Kagenveama*, 541 F.3d 868 (9th Cir. 2008) (holding that commitment period is inapplicable if debtor has no disposable income). Lower courts within the Fourth Circuit are likewise divided. *Compare In re Hylton*, 374 B.R. 579 (Bankr. W.D. Va. 2007) (confirmation of plan proposed by above-median income debtors denied when term of plan was less than 60 months, because "applicable commitment period" was a temporal requirement and not simply a multiplier), *and In re Cushman*, 350 B.R. 207 (Bankr. D. S.C. 2006) (same), *with Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D. N.C. 2008) (holding that debtors who have no disposable income also have no applicable commitment period).

So many jurists and commentators have written so ably on this issue that little would be served by yet another extended analysis of the statutory language and bankruptcy policy. Suffice it to note that the majority of reported cases treat the commitment period as a temporal requirement, not merely a multiplier.[4] Although cogent arguments, both of statutory construction and of bankruptcy policy, have certainly been made to the contrary,[5] on balance this court finds the majority view to be the more persuasive. The court is not unsympathetic to the debtors' policy argument that, given the relatively low percentage of chapter 13 plans that are

---

[4] *See, e.g., In re Luton*, 363 B.R. 96 (Bankr. W.D. Ark. 2007); *In re Davis*, 348 B.R. 449 (Bankr. E.D. Mich. 2006); *In re Mullen*, 369 B.R. 25 (Bankr. D. Or. 2007); *In re Meadows*, 410 B.R. 242 (Bankr. N.D. Tex. 2009); *In re Brown*, 396 B.R. 551 (Bankr. D. Colo. 2008); *In re Grant*, 364 B.R. 656 (Bankr. E.D. Tenn. 2007); *In re Anderson*, 383 B.R. 699 (Bankr. S.D. Ohio 2008); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006).

[5] *See, e.g., In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007); *In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008); *In re Brady*, 361 B.R. 765 (Bankr. D. N.J. 2007); *In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006).

successfully completed, the shorter repayment period that results from treating the commitment period as a multiplier will increase the likelihood that financially-pressed debtors will actually be able to complete their plans. On the other hand, allowing above-median income debtors to exit chapter 13 in less than five years deprives the trustee and creditors of the right to seek an increase in plan payments if the debtors' financial situation were to improve dramatically during that period. *See* § 1329(a), Bankruptcy Code; *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989) (holding that bankruptcy court did not err in requiring increased monthly payment and extending plan period on creditor's motion after substantial unanticipated increase in debtor's income). [6] Accordingly, the court will deny confirmation of the debtors' plan unless they agree to extend the term of the plan from 36 months to 60 months.[7]

---

[6] Although the debtors suggest that requiring them to remain in chapter 13 for the full 60 months is inconsistent with this court's opinion in *In re Murphy*, 327 B.R. 760 (Bankr. E.D. Va. 2005), *aff'd* 474 F.3d 143 (4th Cir. 2007)—which declined to treat an early payoff of a confirmed plan from the sale or refinance of the debtor's residence as a "modification" of the plan—the trustee in the two cases decided by that opinion did not seriously object to the debtors' early exit from chapter 13 but simply sought to capture the cash proceeds from the sale (in one case) and refinance (in the other case) for creditors. Modification of a confirmed plan may raise different issues from confirmation in the first instance. Indeed, there is even a question of whether the disposable income test applies at all to a modification, since § 1329(b), Bankruptcy Code, which specifies the statutory requirements a modified plan must satisfy, omits any reference to § 1325(b). In any event, nothing in this opinion should be read as a retreat from the views expressed in *Murphy*.

[7] The court notes that the plan has a special provision requiring the second deed of trust holder to file a "deficiency" claim within 120 days after plan confirmation. As the plan is structured, however, there would be no "deficiency" in the ordinary sense of that term. That is, the property is not being surrendered for foreclosure, with the possibility that it might sell for less than the debt it secures. Instead, an existing secured claim would simply be rendered unsecured. Assuming that the second deed of trust holder has filed a timely proof of claim to begin with, any judgment avoiding its lien under § 506(d), Bankruptcy Code would have no effect on the amount of its claim, and there would be no need for the creditor to file a further proof of claim. For that reason, the requirement for the creditor to file a "deficiency" claim will be struck from the plan.

A separate order will be entered consistent with this opinion.

Date: _____              _____
                                           Stephen S. Mitchell
Alexandria, Virginia                       United States Bankruptcy Judge

Copies to:

Robert R. Weed, Esquire
Law Offices Of Robert Weed
7900 Sudley Road, Suite 409
Manassas, VA 20109
Counsel for the debtors

Brian Moose
Laura C. Moose
9592 Laurencekirk Pl.
Bristow, VA 20136
Debtors

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee